UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 09-CR-20264-KING/BANDSTRA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JUNIOR SYLVIN, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant JUNIOR SYLVIN's Motion to Suppress Evidence (D.E. 140) filed on August 27, 2009. In brief summary, this motion seeks to suppress any evidence allegedly obtained from a vehicle SYLVIN was driving on the evening of December 8, 2009, under the Fourth Amendment to the United States Constitution. On August 31, 2009, this motion was referred to the undersigned by the Honorable James Lawrence King pursuant to 28 U.S.C. § 636(b) resulting in an evidentiary hearing on this motion on September 23, 2009. Based on the facts as found herein and applicable law, the undersigned recommends that Defendant JUNIOR SYLVIN's Motion to Suppress Evidence by DENIED.

### FINDINGS OF FACT[1]

Prior to December 8, 2009, Special Agent Scott Rosenfeld and other law enforcement officers had initiated a criminal investigation of a drug trafficking organization ("DTO") known as the 68th Street Boys operating in Miami, Florida. Pursuant to that

---

[1] These factual findings are based on the testimony of Special Agent Scott Rosenfeld of the United States Drug Enforcement Administration, a co-case agent in this case. Agent Rosenfeld, while not on the scene described above, was in radio communication with the subject law enforcement officers and was familiar with the relevant events on December 8 and 9, 2009.

investigation, a Title III wiretap order had authorized the interception of a cellular telephone belonging to or used by defendant, JUNIOR SYLVIN; and subsequent telephone interceptions established that SYLVIN was the leader of this DTO which was distributing crack cocaine and other illegal drugs to buyers in and around Little Haiti. SYLVIN was also known to direct and/or supervise other members of this DTO in the acquisition and/or sale of illegal drugs including persons later identified as Emmanuel Othello and Ziv Bythol.

On December 8, 2008, law enforcement officers intercepted telephone conversations between SYLVIN and Othello concerning a sale of crack cocaine by Bythol at or near his Miami residence. The investigation of this DTO had previously established that Othello was the "right-hand man" to SYLVIN who prepared cocaine for distribution from his residence. On this particular date, SYLVIN told Othello that he needed 20 ounces of crack cocaine to give to Bythol for sale to a customer. SYLVIN instructed Othello to prepare the needed amount which SYLVIN would then pick up and bring to Bythol.

Prior surveillance of SYLVIN revealed that he drove a silver 2001 Monte Carlo vehicle. Surveillance agents were able to locate this vehicle at the time of his telephone conversations with Othello and when he arrived at Othello's residence to pick up the 20 ounces of cocaine. Meanwhile, law enforcement officers continued to monitor telephone conversations between SYLVIN and Bythol about the delivery of the cocaine for sale to Bythol's waiting customer.

At 11:56 p.m., SYLVIN was heard advising Bythol that he was on his way to Bythol's location with the cocaine. Surveillance agents were able to follow SYLVIN's vehicle which they believed to contain at least 20 ounces of crack cocaine. For that reason, the surveillance units contacted the local police department and requested assistance from a marked police vehicle in stopping SYLVIN's car for any observed traffic violation. Soon thereafter, SYLVIN's vehicle was stopped by a uniformed police officer driving a marked

vehicle. SYLVIN was on his cellular telephone at the time and was heard advising Othello that he was being pulled over.

Following the stop, the police officer advised SYLVIN of the traffic violation, requested him to exit his vehicle, and placed SYLVIN in the rear of the police vehicle. Defendant was not handcuffed and he was permitted to use his cell phone. SYLVIN was intercepted calling Othello who responded that he was on his way to the scene.

Meanwhile, other law enforcement officers responded to the location and a trained canine was requested to do a dog sniff of the vehicle. SYLVIN was told this and he, in turn, advised Othello of the request for the dog.

Sometime after midnight, the police unit with the canine arrived and the dog alerted to SYLVIN's vehicle. SYLVIN was still seated in the rear of the police vehicle and was not free to leave. At that point, SYLVIN was driven away from the scene in the police vehicle. SYLVIN's vehicle was then searched and cocaine and a firearm was seized from a hidden compartment next to the rear seat.

A short time later, SYLVIN was returned to his vehicle, given a traffic citation, and permitted to drive away in his vehicle. SYLVIN had been in custody for about one to one and one-half hours. Defendant was not formally arrested that night on any charges. SYLVIN's vehicle had also been under the control and custody of the law enforcement officers from the time of its stop until the vehicle was released to SYLVIN nearly 2 hours later.

## ANALYSIS

Defendant moves to suppress all evidence found in his vehicle, including the cocaine and firearm, on the ground that his vehicle was searched without a warrant in violation of his Fourth Amendment rights. Defendant relies, in large part, on *Arizona v. Gant*, 129 S.Ct. 1710 (2009), for the proposition that police officers may search the passenger compartment of a vehicle incident to a recent occupant's arrest only if it is

reasonable to believe that the arrestee might access the vehicle at the time of the search or that the vehicle contains evidence of the offense of arrest. *Id.* at 1724-25. Defendant argues that he was stopped for an alleged traffic offense of which no evidence could be located by searching his vehicle. Motion, pg. 6. Defendant further contends that he was not arrested and charged with the offenses alleged in this case until four months later so that his vehicle could not have been searched under *Gant* or any other authority as incident to an arrest.

The government responds by arguing that defendant's vehicle was searched, not as incident to SYLVIN's arrest, but pursuant to the well-recognized automobile exception to the warrant requirement which allows police officers to conduct a warrantless search of a vehicle if there exists probable cause to believe that the vehicle contains contraband or other evidence which is subject to seizure and there are exigent circumstances which necessitate a search or seizure. Citing *United States v. Alexander*, 835 F.2d 1406 (11th Cir. 1988), and other cases, the government contends that the law enforcement officers had probable cause to believe that SYLVIN's vehicle contained contraband at the time of the stop and that the mobility of defendant's automobile was "exigency enough" under *United States v. Nixon*, 918 F.2d 895, 903 (11th Cir. 1990).

Addressing the issue, the undersigned begins with the well-recognized principle that a police officer may conduct a warrantless search of a vehicle if there exists probable cause to believe that the vehicle contains contraband or other evidence which is subject to seizure under the law and there exists circumstances which necessitate a search or seizure. *United States v. Forker*, 928 F.2d 365, 368 (11th Cir. 1991); *United States v. Alexander*, 835 F.2d 1406, 1409 (11th Cir. 1988). Probable cause to search exists "when the facts and circumstances would lead a reasonably prudent [person] to believe that the vehicle contained contraband." *Id.*, quoting *United States v. Clark*, 559 F.2d 420, 424 (5th Cir.), *cert. denied*, 434 U.S. 969 (1977). Exigent circumstances arise when the inevitable

delay incident to obtaining a warrant must gave way to a need for immediate action. *United States v. Satterfield*, 743 F.2d 827, 844 (11th Cir. 1984), *cert. denied*, 47 U.S. 1117 (1985). "If there is a possibility that the contraband will be destroyed or removed, then a warrantless search is justified due to the exigent circumstances." *Forker*, 928 F.2d at 368. The officers or agents must determine if the exigency exists at the time of the seizure of the automobile, not at the time of the search of the vehicle. *Id.*, at 368-69, citing *United States v. Hall*, 716 F.2d 826, 829 (11th Cir. 1983).

    a. Probable Cause

Here, under the above authority, the first question is whether there was probable cause to believe that SYLVIN's vehicle contained contraband subject to seizure at the time of the stop. Clearly there was. On this particular evening, just hours before the stop, federal agents had heard a telephone conversation between SYLVIN and Bythol, a known associate of SYLVIN, discussing Bythol's need for a specific quantity of cocaine to sell to a third party. SYLVIN was then heard calling Othello and requesting him to prepare the drugs. SYLVIN was then surveilled going to Othello's residence to pick up the drugs Bythol needed for sale to another customer.

At approximately 11:56 p.m., SYLVIN was seen leaving Othello's residence in the silver Monte Carlo and driving toward Bythol's location to deliver 20 ounces of cocaine. The agents knew this from conversations they heard between Bythol and SYLVIN and then SYLVIN and Othello, corroborated by surveillance on SYLVIN's vehicle. Thus, the agents clearly had probable cause to believe that at least 20 ounces of cocaine were in SYLVIN's possession inside the subject vehicle at the time they requested assistance from a marked police unit to stop SYLVIN's car. A uniformed police officer stopped SYLVIN for a traffic violation and placed him in the rear seat of his police car. SYLVIN was then heard calling Othello and advising him of the stop which prompted Othello to tell SYLVIN that he was en-

route to the scene. On these facts, the federal agents had probable cause to believe that cocaine was still in SYLVIN's vehicle.

### b. Exigent Circumstances

Next, the Court must determine whether exigent circumstances existed at the time the vehicle was stopped to search the vehicle without a warrant. Addressing this issue, the Eleventh Circuit has recognized that "the ability of a vehicle to become mobile is sufficient to satisfy the exigency requirement." *United States v. Nixon*, 918 F.2d 903, quoting *Alexander,* 835 F.2d 1409; and citing *California v. Carney*, 471 U.S. 386 (1985); *Michigan v. Thomas*, 458 U.S. 259 (1982). In *Michigan*, the Supreme Court addressed a situation where the driver of a vehicle was arrested for open intoxicants in his vehicle and the vehicle was then searched prior to being towed pursuant to a department policy. Reviewing prior precedent, the Supreme Court upheld the warrantless search stating that "the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend on a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant." 102 S.Ct. at 388-81; see also *United States v. Parrado*, 911 F.2d 1567, 1571 (11th Cir. 1990).

Some years later, the Supreme Court reiterated that no special exigency is required for a warrantless vehicle search beyond probable cause and a showing of the mobility of the vehicle. *Maryland v. Dyson*, 427 U.S. 465, 467 (1999) (per curiam). In this circuit, the requirement of mobility is satisfied merely if "the automobile is operational." *United States v. Watts*, 329 F.2d 1282, 1286 (11th Cir. 2003). Moreover, warrantless car searches have been upheld even where "the possibilities of the vehicle being removed or evidence in it destroyed were remote, if not non-existent." *United States v. Hall*, 716 F.2d 826, 830 (11th Cir. 1983), quoting *Cody v. Dombrowski*, 413 U.S. 433, 441-42 (1973); see also *United*

*States v. Birdsong*, 982 F.2d 481, 483 (11th Cir. 1993) (rejecting claims that a warrantless search was unlawful because the defendant was already in custody and the police had possession of his keys at the time of the search).

Under these cases, the undersigned finds that the federal agents had exigent circumstances to justify a warrantless search of SYLVIN's vehicle. Clearly the car was both mobile and operational in that it had just been stopped by the police on a public street. SYLVIN's removal from the vehicle and the "seizure" of the vehicle are both irrelevant under *Watts* and other cases cited above. The undersigned notes that SYLVIN was only temporarily removed from his vehicle that night and that Othello was "on the way" which might have resulted in the removal of the vehicle or its contents before a search warrant could have been obtained. However, *Cody* and *Hall* both make clear that the possibility of this vehicle's removal from the scene need not even be examined as long as the vehicle was operational.

In short, the undersigned finds that the warrantless search of SYLVIN's vehicle was permitted on the facts of this case due to the probable cause to believe that it contained cocaine at the time of its seizure and the exigent circumstances created by the mobility and operational condition of the vehicle.

## RECOMMENDATION

For all of the foregoing reasons, the undersigned recommends that Defendant JUNIOR SYLVIN's Motion to Suppress Evidence (D.E. 140) be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable James Lawrence King, United States District Judge, within ten (10) days of receipt. *See* 28 U.S.C. § 636(b)(1)(c); *United States v. Warren*, 687 F.2d 347 (11th Cir. 1982); *cert. denied*, 460 U.S. 1087 (1983); *Hardin v. Wainwright*, 678 F.2d 589 (5th Cir. Unit B 1982); see also *Thomas v. Arn.*, 474 U.S. 140 (1985), reh. denied, 474 U.S. 1111 (1986).

**RESPECTFULLY SUBMITTED** this _1st_ day of ~~September~~ October, 2009 in Miami, Florida.

_____
Ted E. Bandstra
United States Magistrate Judge

Copies furnished to:

Honorable James Lawrence King
All counsel of record