UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division

CASE NO.: 09-CR-20264-KING/BANDSTRA

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

JUNIOR SYLVIN, et al.,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court on Defendant's [JUNIOR SYLVIN's] First Motion to Suppress Intercepted Wire Communications and Request for Evidentiary Hearing (D.E. 141) filed on August 27, 2009. On August 31, 2009, this motion was referred to the undersigned for appropriate proceedings by the Honorable James Lawrence King pursuant to 28 U.S.C. § 636(b). Accordingly, the undersigned conducted a hearing on this motion on September 23, 2009. Following careful review of the pleadings, factual findings as set forth below, and applicable law, the undersigned recommends that Defendant's First Motion to Suppress Intercepted Wire Communications be DENIED.

## INTRODUCTION

Defendant, JUNIOR SYLVIN, and co-defendants, are charged in a multi-count superseding indictment with conspiracies to possess with intent to distribute cocaine, possession of cocaine with intent to distribute, and related offenses in violation of Title 21, United States Code, Sections 846, 841(a)(1) and other provisions of federal law. The government has advised that evidence it intends to introduce at trial will include audio recordings of telephone conversations between SYLVIN and certain of his co-defendants which were intercepted pursuant to a Title III wiretap on SYLVIN's telephone authorized

by the Honorable Cecilia M. Altonaga on November 18, 2008, and re-authorized on December 22, 2008. Defendant seeks to suppress all intercepted calls on the grounds that (1) the prosecution had no necessity to obtain or apply for wire interceptions in this case, and (2) due to false and/or misleading information in the Title III application concerning the reliability of a confidential source involved in the investigation of this case.

## ANALYSIS

### A. Necessity for Interception

Defendant first challenges the wire interceptions of his telephone conversations on the ground that the wiretap applications failed to establish the necessity for a wiretap due to information already obtained by the investigators concerning this alleged drug trafficking organization ("DTO"), its participants, and their activities at the time of the initial application. Defendant argues, in particular, that the prosecution, prior to November 18, 2008, had already identified SYLVIN and certain other participants of this DTO, including Frantz Sterlin and Tarvus Daniels; already done extensive background checks on the targets of this investigation; already determined the roles of the identified targets (Sylvin, Sterlin and Daniels) in the alleged conspiracy; already received oral and written reports regarding this and other investigations from the DEA and other law enforcement organizations; already obtained and reviewed pen register and trap and trace evidence as well as telephone records; already conducted extensive surveillance on the targets; already interviewed individuals familiar with this DTO to determine the quantity of cocaine moved by this organization; already used three confidential sources who infiltrated this DTO and provided information concerning locations used and other information to obtain search warrants on at least two locations; already made numerous under cover purchases of cocaine from SYLVIN and Sterlin made possible by conceptually recorded telephone conversations; and already obtained detailed information on the illegal narcotics activities of this DTO from three "cooperating defendants." Motion, pgs. 2-5. Thus, SYLVIN argues that the

prosecution had no need for a wiretap on his telephone at the time of the application; and that the government's allegations of need for such interception was "untenable and clearly unsustainable" as documented in the remainder of the application.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 (hereinafter "Title III"), 18 U.S.C. §§ 2510-2520, sets forth the numerous requirements the government must meet before wire interceptions may be authorized.  Among others, an application for interception must contain a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appeared unlikely to succeed if tried, or to be too dangerous.  18 U.S.C. § 2518(1)(c).  The "necessity" requirement is designed to ensure that electronic surveillance is not routinely employed nor used when less obtrusive techniques will succeed.  *United States v. Giordano*, 416 U.S. 505, 514 (1974).  The affidavit, however, need not show a comprehensive exhaustion of all possible techniques, but must simply explain the retroactive or prospective failure of several investigative techniques that reasonably suggest themselves.  *United States v. Alonso*, 740 F.2d 862, 868 (11th Cir. 1984); *United States v. Hyde*, 574 F.2d 856, 867 (5th Cir. 1978).  "The affidavit must be read in a 'practical and common sense fashion' and the district court is clothed with broad discretion in its consideration of the application." *Id.* (quoting *United States v. Brick*, 502 F.2d 219, 224 n. 14 (8th Cir. 1974)).  Reviewing courts are sensitive to the reality that the quantum of evidence "sufficient to obtain a conviction is an imprecise concept." *United States v. Nixon*, 918 F.2d 895, 901 (11th Cir. 1990).  As a result, "[c]ourts will not invalidate a wiretap order simply because defense lawyers are able to suggest *post factum* some investigative technique that might have been used and was not." *Hyde*, 574 F.2d 867.

Reviewing the Title III affidavit here, the undersigned finds that the government has satisfied the necessity requirement despite information already obtained concerning this DTO from other investigative techniques.  While defendant is correct that the investigators

had already identified SYLVIN and certain others in this DTO through confidential sources and other law enforcement techniques, a wiretap was still necessary to identify many others in this organization, their roles in the organization, and "the full scope of the conspiracy under investigation . . ." *Hyde*, 574 F.2d 869.  Pen registers, covert surveillance, and even infiltration of the organization by confidential sources over the preceding several months had not been successful in accomplishing these important goals of the investigation.  Indeed, cooperation of informants has been held to not negate the need for electronic surveillance. *United States v. Messersmith*, 692 F.2d 1315, 1317 (11th Cir. 1982).  Contrary to defendant's assertions, the affidavit here contained more than mere "boilerplate" to explain the need for a Title III wiretap to determine the scope and particular participants in this organization.

Additionally, the fact that confidential sources were able to make small drug purchases from certain targets did not obviate the need for a wiretap on SYLVIN's telephone. *See United States v. Nixon*, 918 F.2d at 900 (wiretap found necessary even where application stated that at least two targets had agreed to sell narcotics to undercover agents).  Here, the affidavit explained that despite information already obtained a Title III wiretap was necessary to identify the amount of drugs being sold by the targets and their sources of supply.  Affidavit, ¶ 70, 71.

Finally, the affidavit discussed alternative investigative techniques and their shortcomings in this investigation.  While acknowledging the information obtained from confidential sources and cooperating defendants, the government nevertheless explained that the targets had not and likely would not discuss specific information concerning their ultimate sources of supply, the locations where they stored the drugs and drug proceeds, or the precise manner by which they laundered drug proceeds. Affidavit ¶ 73.  Regarding physical surveillance, the affidavit stated that the government agents had had only limited success in that surveillance did not reveal the names, addresses or telephone numbers

and other identifying information for all of the transporters, suppliers and distributors in this organization. Affidavit ¶ 74. The affidavit advised of one particular instance where surveillance was nearly detected which then diminished the limits of their success with future surveillance. *Id.* Also, surveillance was useful to confirm meetings between co-conspirators but could not provide evidence of the purpose of such meetings, or what was discussed during such meetings. Affidavit ¶ 75. Again, the affidavit makes specific reference to one such meeting on September 7, 2007, involving a confidential source who was advised that the targets were suspicious of police in the area which delayed a particular drug deal. *Id.*

In similar fashion, the affidavit explained the limitations of other investigative techniques including telephone records, pen registers, trap and trace information, grand jury investigation and use of search warrants. Reviewing this information, which continued through the day of the application for re-authorization, the undersigned concludes that the affidavits for both the initial Title III application and re-authorization met the necessity requirement for wire interception so that defendant's motion to suppress shall not be granted on this basis.

B. *Franks v. Delaware* Violation

Alternatively, defendant seeks suppression of the wire interceptions due to false or misleading information in the Title III affidavit concerning the reliability of a confidential source ("CS 1") as represented in the original application ("CS 1 has provided reliable information as to the 68th Street Boys DTO."). Defendant argues, from discovery provided by the government, that CS 1 was actually working "both sides of the street" by conducting his own drug deals with the targets of this investigation as well as others during the time the CS 1 was being used by the government as a "reliable" informant. Motion, pgs. 24-25. Defendant argues, as evidence of this violation, an intercepted conversation on January 9, 2009, in which CS 1 discussed a purchase of 2-3 ounces of heroin from SYLVIN –

5

coupled with at least sixty-six prior calls between CS 1 and SYLVIN between December 30, 2008 and January 9, 2009 suggesting to SYLVIN that CS 1 was "working both sides" for some time without knowledge of the controlling agents. Defendant contends that such evidence warranted an evidentiary hearing under *Frank v. Delaware*, 438 U.S. 154 (1978), to determine whether the agents knew or should have known of this unlawful activity by the CS 1 which should then have been disclosed in the Title III application.

## FACTUAL FINDINGS

Finding an arguable *Frank's* violation and without serious opposition by the government, the undersigned conducted an evidentiary hearing and heard testimony by Special Agent Michael Rainwater, the affiant to the Title III application. Based on his credible testimony and without conflicting evidence thereto the undersigned makes the following factual findings.

Special Agent Rainwater prepared the Title III affidavit based on information available to law enforcement officers at the time. Agent Rainwater included the criminal history of CS 1 and stated that this informant had proved "reliable" in the past. Agent Rainwater knew of no unreported contacts by CS 1 with SYLVIN or any other targets of this DTO concerning drug purchases from the DTO. However, CS 1 was not monitored by his controlling agent at all times that he worked as an informant so that not all of his telephone calls to SYLVIN were necessarily recorded or intercepted by the agents.

SYLVIN's telephone calls were monitored by a pen register prior to and during the Title III wiretap. Thus, the law enforcement officers were able to determine the number of calls made to and by SYLVIN during this time period. Once the wire was established, the agents could use the pen register to determine the identity of certain callers intercepted by the wire; and even identify callers who contacted SYLVIN prior to the wiretap interceptions. Thus, the law enforcement officers were able to corroborate that CS 1 made a controlled call to SYLVIN on June 18, 2008, well before the wiretap application on November 18,

2008. From these two sources, the agents were able to determine that CS 1 made numerous calls to SYLVIN between October and December 2008 while he was working as a confidential informant for the agents. The agents were aware that CS 1 was making such calls in his role as a "buyer" of small amounts of cocaine from this DTO. The agents also knew that CS 1 used several different telephone numbers when he contacted SYLVIN.

Agent Rainwater was not aware of any uncontrolled purchases or attempted purchases by CS 1 from SYLVIN or anyone else in this DTO at any time prior to the original Title III application. Agent Rainwater learned sometime later that CS 1 used the code name "Red Boy" when he called SYLVIN to buy drugs in his undercover capacity. Agent Rainwater was later advised that CS 1 called SYLVIN on January 9, 2009, to buy drugs from SYLVIN using the name "Red Boy." Agent Rainwater did not know whether this was an uncontrolled call by the CS 1 to buy drugs from SYLVIN or whether he reported that call to his controller.

The wiretap on SYLVIN's telephones allowed the agents to monitor the numbers of calls to and from SYLVIN after November 2008. The only call by CS 1 using the name "Red Boy" that may not have been in his capacity as a controlled source occurred on January 9, 2009, after the original application and re-authorization. Agent Rainwater did not know of any independent drug purchases or attempted purchases by CS 1 when he prepared the Title III application. To this date, Agent Rainwater believes that CS 1 provided full and complete information to the law enforcement officers about his activities as a confidential source as corroborated by other sources. Agent Rainwater had and continues to have no reason to question the reliability of information provided by CS 1 at the time of the application.

## ANALYSIS

Based on the testimony of Agent Rainwater, the undersigned finds no false or misleading information concerning CS 1 in the Title III application. Defendant attempts to have this Court believe that CS 1 was "working two sides of the street" based on one "suspicious" telephone call between CS 1 and SYLVIN in January 2009, after the Title III application and renewal. This telephone call may or may not have been reported to his controlling agent. Defendant would also have the Court infer that prior telephone calls between CS 1 and SYLVIN over the preceding months reflected in the pen registers were similarly suggestive thereby supporting his position that the CS 1 was working "both sides of the street." The undersigned finds no factual basis to reach such a conclusion. Rather, the undersigned accepts the credible and uncontradicted testimony of Agent Rainwater that supports his statement in the Title III application that CS 1 was a reliable informant at the time of the application and re-authorization. Defendant clearly has the burden to prove otherwise and has failed to do so in this instance.

## SUMMARY

For all of the foregoing reasons, the undersigned recommends that Defendant's First Motion to Suppress Intercepted Wire Communications be DENIED.

The parties may serve and file written objections to this Report and Recommendation with the Honorable James Lawrence King, United States District Judge, within ten (10) days of receipt. *See* 28 U.S.C. § 636(b)(1)(c); *United States v. Warren*, 687 F.2d 347 (11th Cir. 1982); *cert. denied*, 460 U.S. 1087 (1983); *Hardin v. Wainwright*, 678 F.2d 589 (5th Cir. Unit B 1982); *see also Thomas v. Arn.*, 474 U.S. 140 (1985), reh. denied, 474 U.S. 1111 (1986).

**RESPECTFULLY SUBMITTED** this ~~1st~~ day of ~~September~~ October, 2009 in Miami, Florida.

_____
Ted E. Bandstra
United States Magistrate Judge

Copies furnished to:

Honorable James Lawrence King
All counsel of record