UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 09-CR-20264-KING

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

JUNIOR SYLVIN.

        Defendant.
_____/

## DEFENDANT JUNIOR SYLVIN'S SENTENCING MEMORANDUM AND OBJECTIONS TO HIS PRE-SENTENCE INVESTIGATION

COMES NOW the Defendant, JUNIOR SYLVIN, by and through his undersigned attorney and hereby files his Sentencing Memorandum and Objections to his Pre-Sentence Investigation (PSI). As grounds therefore, Defendant states as follows:

### COUNSEL'S POSITION

Undersigned counsel wishes to make his position clear from the outset of this pleading that he believes that this particular Defendant is in the position requiring the following lengthy objections based on the specific actions of the Government in this unusual case (as set forth below). Undersigned counsel further believes that significant judicial efforts were expended in an *unnecessary* trial in this case (as well as re-litigation of some pre-trial motions), again, due to the specific actions of the Government herein. Hence, it is undersigned counsel's position (as explained below) that the Government should not now benefit from these actions (or should actually be estopped from seeking such benefit) by arguing for and/or obtaining an increased sentence for Defendant (above the ten (10) years) actually applicable herein.

# FACTS

1. Defendant, JUNIOR SYLVIN was charged as the co-lead Defendant (with fugitive, EMMANUEL OTHELLO) in this wire tap case consisting of thousands of intercepted calls over several months.

The Government charged this case as a twenty (20) Count Indictment with five (5) separate conspiracies as well as numerous substantive counts, some of which were alleged within the time frame of one of the charged conspiracies, some of which were not. This Honorable Court severed Counts 1, 5, 6, 7 and 14 from the Indictment to be tried separately.

2. Defendant, JUNIOR SYLVIN was the target of the wire taps and therefore his voice was allegedly intercepted on each and every call. Undersigned counsel has practiced criminal defense in the Southern District of Florida and elsewhere for approximately 30 years, reviewed all Discovery with the Defendant and reasonably advised him accordingly.

3. *Well before* the Government was required to prepare for trial, Defendant JUNIOR SYLVIN authorized undersigned counsel to negotiate a plea for a resulting ten (10) year sentence: (five (5) for the Conspiracy in Count 1 and possession Counts 5, 6 and 14 and five (5) years consecutive for the firearm charge in Count 7 (*these are the exact Counts for which Defendant was ultimately convicted at trial*). It should be noted that no evidence of relevant conduct resulting in more than a ten (10) year guideline sentence was ever apparent to undersigned counsel while reviewing the Discovery. Additionally, it is undersigned counsel's position (as set forth below in further detail), that neither leading up to or throughout the trial, did the Government contend or *present*

*evidence* that, any relevant conduct existed that would result in a sentence higher than ten (10) years under the U.S. Sentencing Guidelines.

Prior to trial, the Government refused to offer any Plea Agreement other than pleading to the Indictment which carried fifteen (15) years in minimum mandatory sentences for the Defendant (ten (10) **for Count 4** and five (5) consecutive for Count 7).

It should be further noted that the Government only charged Defendant SYLVIN and his co-defendants with a conspiracy involving **500 grams or more** which traditionally means **less than 5 kilos** of cocaine. **Nowhere was it charged or alleged that he, or they, were responsible for 5-15 kilos** (as now presently alleged in the PSI). The Government could argue that the language of the Statute says more than 500 grams, but clearly from 30 years experience in this jurisdiction, when the Government believes they have proof of 5-15 kilos, and/or intends to prove same….they would charge the Defendant in the Indictment (or here where they even superseded) with *that* amount, more than 5 kilos, which carries a ten (10) year minimum mandatory. This was never done, and *only now* does the Government contend that the amount should be calculated by the Court as 5-15 kilos.

4. Hence, the only rationale behind the Government's insistence of a fifteen (15) year plea would have been Count 4, which alleged a conspiracy of more than 50 grams of crack cocaine with cooperating co-defendant TARVUS DANIELS and carried a ten (10) year minimum mandatory (followed by the five (5) year gun count). Undersigned counsel saw no reasonable *evidence* of this Count (which as set forth below, **was subsequently dismissed by the Government.**

5. At all times prior to trial, the Government *refused to entertain any plea less than a 15 year sentence* which would result from a plea to counts including Count 4 (ten (10) year minimum mandatory) and then the consecutive five (5) years for the firearm charge in Count 7.

**Finally, it should be noted that the Assistant United States Attorney handling this case made it very clear to all counsel in this case, at all times prior to and leading up to trial, that any plea offers (*if they would be made*), were "all or none." The Government took the position that the only way *any* plea offers would be made in the case (to the five defendants remaining: SYLVIN, VICTOR, STERLIN, TAYLOR and THOMPSON), would be if *all* defendants pled guilty.** Hence, by taking this position, the Government removed the possibility of SYLVIN entering a plea based *on his own* Acceptance of Responsibility, making it dependent on the willingness of his co-defendants to do the same. As an officer of the Court, undersigned counsel can attest that one or more of the co-defendants in this case were not willing to accept any plea, hence, SYLVIN was denied the availability of a plea, because of the Government's "all or none" position.

6. Hence, based on the Government's position and lack of apparent evidence which could result in a sentence greater than 10 years under the guidelines, Defendant was given no option but to proceed to trial.

7. Defendant was convicted at trial of the Counts for which he was tried and **for which he had been willing to plead guilty to….all along** (the ten (10) year minimum mandatory crack count had been severed by the Court).

Subsequent to Defendant's conviction at trial (**for those counts he was willing**

**to plead guilty to, <u>before</u> the trial**)….<u>the Government then **dismissed** all remaining counts</u> against the Defendant, <u>*including Count 4, the ten (10) year minimum mandatory count that the Government had previously insisted on Defendant pleading to.*</u> (Defendant waived his appellate rights from the trial as a requirement of the dismissal).

8.  Hence, now, Defendant, JUNIOR SYLVIN is placed in the unique position of having to argue that his sentence should be limited to the ten (10) years: (five (5) for the Count 1 Conspiracy followed by five (5) consecutive for the firearm charged in Count 7), *the <u>same ten (10) years he was willing to plead guilty to well before the trial</u>*. This is not a situation wherein the jury acquitted a defendant of a count which carried more jail time, *this is a situation wherein the Government dismissed a charge post-trial, after insisting pre-trial that the defendant plead guilty to it, forcing him to trial.*

**Based on the unique circumstances of this case, undersigned counsel respectfully requests that the Government not be rewarded by their actions, that in counsel's opinion resulted in an unnecessary four (4) day trial (and re-litigation of pre-trial motions), when the ultimate result (Defendant's conviction on Counts 1, 5, 6, 7 and 14) could have (<u>*and should have*</u>) been achieved well prior to the trial of this cause, <u>*saving significant judicial resources*</u>.**

Undersigned counsel further contends that *had* Defendant, SYLVIN been offered a plea, the trial of his remaining co-defendants would have been *significantly* shorter in that much of the evidence against him (specifically for Counts 5, 6, 7 and 14)…would not have been presented in that it would have been wholly irrelevant against all of the co-defendants, none of which were charged in those counts.

5

## OBJECTIONS

9. Paragraph 3 of the PSI indicates that Defendant was associated with a "gang" known as the "68th Street Boys." Defendant hereby DISAGREES with and OBJECTS to said characterization being included in the PSI.

At a four (4) defendant joint trial of this cause, the jury acquitted two (2) of the defendants. Both FRANTZ STERLIN and ERIC TAYLOR were acquitted. Co-defendant, CHRIS VICTOR was simply convicted of lesser crimes for allowing Defendant, JUNIOR SYLVIN to use his house for a narcotics transaction. Hence, no evidence of any "gang" related activity was either presented or proved and should be stricken from the PSI.

Additionally, Paragraph 3 indicates that the defendants were "into violent crimes that involved firearms." Defendant hereby DISAGREES with and OBJECTS to said characterization being included in the PSI.

No evidence was presented at the trial of this cause that the Defendant, or his co-defendants were "into violent crimes that involved firearms." Defendant, SYLVIN was convicted of possessing a firearm in a secret compartment of an automobile he was driving. No other evidence regarding firearms or violent crimes was ever presented in this case. In that no evidence of same was presented or proved, this allegation should be stricken from the PSI.

**c.** Additionally, Paragraph 3 indicates that the Defendant, along with co-defendant, EMMANUEL OTHELLO, was a leader of a "drug distribution organization."

After a four (4) day trial, the jury acquitted both FRANTZ STERLIN and ERIC TAYLOR, the individuals alleged by the Government to be "employees" of the "drug distribution organization." Hence, in that the Government was unable to establish that STERLIN and TAYLOR were "employees" of any drug distribution organization (and undersigned counsel would submit that no such evidence was even presented), this allegation should be stricken from the PSI.

10. Paragraph 4 and 106 of the PSI indicates that according to the Government, the Conspiracy involved, and Defendant SYLVIN is responsible for, the sale of 6,987 grams of cocaine. Defendant hereby DISAGREES with and OBJECTS to said allegation being included in the PSI or considered by the Court for sentencing.

   a. The **<u>only evidence</u>** regarding the **<u>amount</u>** of cocaine presented by the Government at the trial of this cause was **83.4 grams** allegedly purchased from Defendant JUNIOR SYLVIN on November 25, 2008 in an undercover controlled buy and **581.2 grams** which were seized from a secret compartment in a vehicle he was driving on December 8, 2009. No other amounts were proven at trial. Hence, the total amount of cocaine proven at trial was **664.6 grams** (83.4 plus 581.2).

   Hence, without any such **proof** of the alleged 6,987 grams, said amount cannot be considered as relevant conduct against the Defendant. In that no evidence of same was proved, this allegation should be stricken from the PSI and amended to **664.6 grams**.

11. As paragraphs 4-105 allegedly detail the Government's reasoning behind their position that the Conspiracy involved the sale of 6,987 grams of cocaine, Defendant hereby DISAGREES with and OBJECTS to said allegations being included in the PSI.

7

      a.   Again, no additional amounts above the 664.6 grams were proven at trial;

      b.   The 6,987 gram amount is more than what was alleged in the Indictment which charged the defendants in Count 1 with more than 500 grams of cocaine, not more than five (5) kilos;

      c.   Additionally, many of the conversations the Government alleges in paragraphs 4-105 were involved in various Counts either severed by the Court and not presented at trial and/or dismissed (by the Government themselves) prior to being tried;

      d. In paragraphs 4-105 the Government also relies on evidence they contend is based on **Pen Registers** to establish the 6,987 gram amount. In the trial of this cause this Honorable Court **ruled the Pen Registers to be admissible** and therefore they were not presented at trial and should not be used to increase Defendant's sentence herein;

      e.   Additionally, the Government provided three charts (Attachments A, B and C) to U.S. Probation for the purpose of corroborating their allegation as to the 6,987 grams. **These charts are presented here for the first time, they were never provided in Discovery nor were the contents of same proved at trial** and therefore they should not be considered now to increase the Defendant's sentence;

      f. The quantities of narcotics alleged in the Attachments do not match those alleged in the PSI;

      g. The Attachments indicate alleged transactions between SYLVIN and other individuals (OTHELLO in Attachment A, VICTOR in Attachment B and THOMPSON in Attachment C).

      First, the dates alleged in Attachment A, are consistent with several of the different conspiracies alleged in the Indictment. This Honorable Court severed the

counts specifically for the reason that it would be impossible to determine which transaction was being discussed as it would relate to which conspiracy (and the legal ramifications to each defendant from that scenario). Likewise, it is unclear from the Attachment A whether these alleged transactions occurred during the conspiracy in Count 1, for which SYLVIN was convicted or in other conspiracies that were dismissed by the Government.

Defendant respectfully requests that the activities alleged in counts that were dismissed by the Government not be counted as relevant conduct against him for sentencing herein. The dismissals were *in return for* Defendant, SYLVIN waiving his right to appeal any rulings at trial as well as pre-trial motions. The Government gained a benefit and avoided significant use of resources by not having to respond to what would have amounted to a lengthy appellate process and not having to try the remainder of SYLVIN's severed counts (which could have resulted in multiple additional trials). They offered and accepted the agreement to dismiss the remaining counts based on the benefit they received. Although case law states that the Court *may* consider dismissed conduct, it is respectfully requested that the Court not do so, based not only on the benefit to the Government but the resulting judicial economy from not having to try the remaining four (4) conspiracy cases against the Defendant who agreed to the appellate waiver (and who had been willing to plead guilty *well before* the trial).

Second, the amounts in Attachment B, allege 1,543 grams transacted with co-defendant, CHRIS VICTOR. VICTOR went to trial in this case and the jury found him guilty of **less than 500** grams of cocaine, hence, again, if the Government did not

prove the alleged amount in Attachment B against VICTOR, it stands to reason that they did not prove it against the only other person alleged in the transactions, SYLVIN.

Third, the counts involving SYLVIN and THOMPSON (3,337 grams alleged in Attachment C) were dismissed by the Government against SYLVIN. Again, the Government obtained a significant benefit in the Defendant's appellate waiver. They offered and accepted the agreement to dismiss the remaining counts based on the benefit they received. Again, although case law states that the Court *may* consider dismissed conduct, it is respectfully requested that the Court not do so, based not only on the benefit to the Government but the resulting judicial economy from not having to try the remaining four (4) conspiracy cases against the Defendant, who accepted the appellate waiver (and who had been willing to plead guilty *well before* the trial).

12. Paragraph 106 indicates that SYLVIN should receive a four (4) level enhancement pursuant to USSG 3B1.1(a). Defendant hereby DISAGREES with and OBJECTS to said allegation being included in the PSI or that it is applicable herein.

USSG 3B1.1(a). states that if the defendant was an **organizer or leader** of criminal activity that **involved five or more participants** or **was otherwise extensive**, increase by 4 levels. [emphasis added].

Defendant was not an organizer or leader **of** 5 or more participants. Although the Government alleged their theory that SYLVIN was the leader of some extensive drug distribution organization, the proof, **as well as the jury's verdict,** showed otherwise as set forth below.

13. First, EMMANUEL OTHELLO (fugitive) was a *co-leader*: The PSI states at

10

paragraph 3, pg. 5: "In sum, Sylvin **and Othello were identified as <u>the leaders</u>** of the drug distribution organization." It later states: the drug trafficking organization **headed by Sylvin <u>and</u> Othello**" (paragraph 110, pg. 26). Hence, if OTHELLO was a leader, *along with* SYLIN, **then SYLVIN was not an organizer or leader *of* OTHELLO**;

    6.   Defendant, DISAGREES with and OBJECTS to the allegation in paragraph 20, 21, etc. that CHRIS VICTOR is a worker for SYLVIN. The jury only convicted CHRIS VICTOR on lesser charges (cocaine conspiracy for less than 500 grams of cocaine or less than 5 grams of crack). Hence, the Government did not prove the allegations in paragraph 21 of the PSI that VICTOR was involved with SYLVIN in any type of "extensive" drug trafficking organization and/or that SYLVIN was a leader or organizer over VICTOR.

    7.   Defendant, DISAGREES with and OBJECTS to the allegation in paragraphs 20, 39, etc. that ERIC TAYLOR is a worker for SYLVIN. The Government presented one phone call that allegedly contained TAYLOR's voice on it and one call that mentioned someone named "E." Additionally, cooperating co-defendant, TARVUS DANIELS testified, but clearly, the jury completely disregarded all of this evidence when they **acquitted ERIC TAYLOR of the conspiracy**. Hence, SYLVIN should not be considered to have been a manager or organizer of TAYLOR.

    8.   Defendant, DISAGREES with and OBJECTS to paragraphs 20, 35, etc. alleging that FRANTZ STERLIN is an "employee" of SYLVIN. Again, the Government alleged this to the jury, who did not believe that the evidence proved this fact and **acquitted STERLIN of the conspiracy.** STERLIN was subsequently convicted in a *separate* trial of making *independent* sales, but no evidence was proven that he "worked" for SYLVIN. Additionally, the PSI states: "Sterlin purchased drugs from Sylvin **and then**

11

*independently* **distributed the drugs on his corner."** Hence, SYLVIN should not be considered a manager or organizer of STERLIN.

In summary, at best, the evidence presented showed that these individuals were each *independently* selling cocaine. No evidence was presented that SYLVIN was a manager or organizer of any of these individuals as reflected by the jury's verdict.

9. The remaining individuals were acting *independently* of, and were never even alleged to be part of, the supposed "organization" and therefore were not managed or organized by SYLVIN. The Government's own stated position throughout these proceedings is set forth in the PSI. The Government presented their version of the facts in the PSI as follows:

NIKO THOMPSON "is a supplier **for** SYLVIN" (paragraph 43, pg. 13);

ZIV BYTHOL, a/k/a " Leven," role is that of **a buyer from** Sylvin and then a **distributor to other** (unknown) clients" (paragraph 50, pg. 14), "Ziv Bythol was identified as one of the larger *independent* distributors who got their cocaine from Sylvin (paragraph 112, pg. 27);

TARVUS DANIELS "was **a buyer from** Sylvin who *independently* distributed after acquiring the narcotics" (paragraph 62, pg. 16);

GORDON LOUIS only became known to the Government when he was found at Niko Thompson's residence during the arrest of all the defendants in this case. **No connection whatsoever is alleged between LOUIS and SYLVIN.**

Hence, again, since the remainder of the above co-defendants acted *wholly independent* of SYLVIN's alleged "organization," **and no evidence exists whatsoever**

12

**that he ever managed or organized any of them**, the four (4) level enhancement of USSG 3B1.1(a) does not apply to SYLVIN herein.

Likewise, the Government did not prove that there existed an "organization" herein, let alone that there existed an "extensive" organization. As indicated above, two of the alleged "employees" were acquitted in the trial of the alleged conspiracy. Obviously, the jury did not believe that there was any **extensive** conspiracy when they acquitted two of the three co-defendants and only found the third guilty of an amount **less than 500 grams**.

The 11th Circuit has cited examples of "otherwise extensive" organizations such as:

> In *United States v. Rodriguez,* 981 F.2d 1199, 1200 (11th Cir.1993) (footnote omitted), **we held that the facts established that a defendant was involved in an "otherwise extensive" criminal activity when the defendant "was organizing a drug transaction that extended from Columbia to Florida to Boston to New York, and which included the purchase and street distribution of 100 kilos of cocaine worth $350,000 in the wholesale market**." *See also United States v. Gupta,* 463 F.3d 1182, 1198 (11th Cir.2006) (**holding that the district court clearly erred by not finding that a criminal activity involving "seven corporations, numerous straw owners, Medicare reimbursements of over $ 15 million, and repeated failure to disclose related party status over a seven-year period" was "otherwise extensive."**). *U.S. v. Slaughter*, 298 Fed.Appx. 876 (C.A.11 (Ga.) 2008) [emphasis added].

Hence, in the case at bar, the Government did not prove that any organization existed at all, let alone an "otherwise extensive" one. Clearly, these defendants, independently selling cocaine on the street do not represent an "otherwise extensive organization" as compared to the examples addressed by the 11th Circuit in the above

13

decisions. At best, the government proved at trial a conspiracy between SYLVIN and VICTOR involving less than 500 grams of cocaine. As set forth herein, besides VICTOR and the acquitted STERLIN and TAYLOR, the remainder of the co-defendants in this case were acting *independently* of any alleged "organization" involving SYLVIN (as evidenced by the Government's position throughout this case and in the PSI). Hence, no evidence exists that the Defendant, SYLVIN was involved in an "otherwise extensive" organization and 3B1.1(a) does not apply herein.

In that the two alleged "employees" were acquitted and VICTOR's verdict reflects his allowing SYLVIN to simply use his house (for less than 500 grams), no evidence of "leadership" by SYLVIN has been proven as required by the 11th Circuit's stated position on 3B1.1(a).

> "[S]ection 3B1.1(a)'s plain language requires *both* a **leadership role** *and* **an extensive operation**." *United States v. Yates,* 990 F.2d 1179, 1181 (11th Cir.1993). It requires "the **exercise of some authority** in the **organization**, the exertion of some degree of control, influence, or leadership," **and a mere "seller/buyer relationship" or the defendant's status as a supplier is insufficient to justify imposition of an upward departure under § 3B1.1(a)**. *Id.* at 1182 (quoting *United States v. Brown,* 944 F.2d 1377, 1385 (7th Cir.1991)).*U.S. v. Flowers*, 275 Fed. Appx. 904 (C.A.11 (Fla.) 2008). [emphasis added].

Clearly, the Government was unable to establish any organization, let alone SYLVIN's authority over one and, **at best, established that he was a "supplier" which is insufficient to justify imposition of an upward departure under § 3B1.1(a).**

The 11th Circuit has held: **"We agree with Yates that section 3B1.1(a)'s plain language requires *both* a leadership role *and* an extensive operation. Without proof**

**of the defendant's leadership role, evidence of the operation's extensiveness is insufficient as a matter of law to warrant the adjustment."** *U.S. v. Yates*, 990 F.2d 1179 (C.A.11 (Ala.) 1993) at 1181, 1182. [emphasis added].

10. Defendant DISAGREES with and OBJECTS to paragraph 120 which computes his Base Offense Level at 32. As set forth above, the Government proved at trial that 83.4 grams were seized from SYLVIN on November 25, 2008 in a controlled buy and 581.2 grams were seized from a secret compartment from the vehicle Defendant was driving on December 8, 2008. The Government now asks the Court to increase Defendant's offense level based on a series of charts (Attachments to the PSI, A, B and C) that were never provided to defendants in Discovery nor were the contents of same proven at trial. Defendant herein also reserves any objections and/or arguments applicable herein under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and its progeny.

Additionally, Defendant was charged in the indictment herein with Conspiracy to Possess with Intent to Distribute **more than 500 grams** of cocaine (**not** more than 5 kilograms of cocaine). It is *only now* the Government's position that Defendant should be accountable for between 5 and 15 kilos.

11. Defendant DISAGREES with and OBJECTS to paragraph 123 that Defendant's offense level should be enhanced by four (4) levels pursuant to USSG 3B1.1(a), for the reasons set forth above indicating that he was not a leader or organizer of five (5) or more participants nor was the activity he involved in otherwise extensive.

12. Defendant DISAGREES with and OBJECTS to paragraph 127 that he receive no

15

reduction for Acceptance of Responsibility. The PSI states: "Although he has submitted a statement for acceptance of responsibility, the defendant proceeded to trial in this matter and put the Government to its burden."

First, the Defendant proceeded to trial because he was given no reasonable choice by the Government. As set forth above, Defendant offered to plead guilty to the exact charges for which he has been convicted by the jury. Defendant was willing to do so, *well before* the Government had to prepare for trial. Again, now that the Defendant has been convicted of the charges he was willing to plead guilty to, the Government has dropped the charge they insisted he plead guilty to *before* the trial (Count 4). Defendant, has outlined all of the above specifically in his extensive Acceptance of Responsibility Statement and should therefore receive a three (3) level reduction for Acceptance of Responsibility.

Second, the fact that Defendant went to trial, in and of itself (let alone that he was forced to by Government action), is not enough to deny him Acceptance of Responsibility.

> The commentary under the Guidelines for acceptance of responsibility states that **"[c]onviction by trial does not preclude a defendant from consideration under this section. A defendant may manifest sincere contrition even if he [or she] exercises his [or her] constitutional right to a trial." U.S.S.G. § 3E1.1, comment. (n. 2)**; *United States v. Johnson,* 906 F.2d 1285, 1291 (8th Cir.1990) (affirming reduction for acceptance of responsibility although defendant, while admitting substantial involvement, was unwilling to accept responsibility for totality of verdict); *United States v. Big Crow,* 898 F.2d 1326, 1330 (8th Cir.1990) (finding acceptance of responsibility even though defendant expressed doubt that he intentionally assaulted victim). *U.S. v. Charger*, 928 F.2d 818 (C.A.8 (S.D.),1991). [emphasis

added].

The Courts have also held:

> …U.S.S.G. § 3E1.1(a) requires a sentencing court to reduce by two levels the offense level of a defendant who "clearly demonstrates acceptance of responsibility for his offense." In making the determination whether a defendant has accepted responsibility, the district court **"may not consider against the defendant any constitutionally protected conduct."** *United States v. Sitton,* 968 F.2d 947, 962 (9th Cir.1992). Thus, for example, while the district court "may deny the reduction because of a lack of contrition despite the increased costs imposed upon the defendant's choice to remain silent or to proceed to trial," the court "may not deny the reduction *because* of that choice in spite of other manifestations of sincere contrition." *Id.* (emphasis added). *U.S. v. Ochoa-Gaytan*, 265 F.3d 837 (C.A.9 (Cal.),2001) at 841, 842.
>
> …"Indeed, were a defendant *required* to plead guilty to be entitled to the reduction, the sentencing guidelines would penalize the exercise of the constitutional right to go to trial." *McKinney,* 15 F.3d at 852 (emphasis in original). Moreover, "[e]ven a defendant who contests his factual guilt may, under some circumstances, be entitled to such an adjustment.
>
> **…** *see United States v. Thompson,* 76 F.3d 166, 170 (7th Cir.1996) (affirming § 3E1.1(a) reduction for a defendant who pled not guilty and went to trial, but provided a complete post-arrest statement of her involvement in the offense and did not subsequently deny her role), that possibility does not justify disturbing the district court's finding that an acceptance of responsibility reduction was not warranted in this case. *See United States v. Burnett,* 66 F.3d 137, 141 (7th Cir.1995) **("Had the judge decided the other way, we would not have disturbed that decision either ... That is what it means to say that a judge has discretion**.") *Ochoa-Gaytan* at 842, 843. [all emphasis added].

Hence, in that Defendant was willing to accept responsibility well before the Government was forced to prepare for trial, and because their actions resulted in him

going to trial on the exact charges he was willing to plead guilty to (and afterwards dismissing the additional counts that prohibited a plea in the first place), Defendant respectfully requests this Honorable Court grant him a three (3) level reduction for Acceptance of Responsibility.

13. Defendant DISAGREES with and OBJECTS to paragraph 128 which computes his Total Offense Level at 36. Based on the arguments set forth by Defendant above, his Total Offense Level should be **Level 26** (*500 grams to less than 2 kilos*) calculated from the **664.6 grams** (83.4 plus 581.2) proven at trial.

14. Defendant DISAGREES with and OBJECTS to paragraph 179 computing his guideline imprisonment range as 235 to 293 months.

Based on the arguments set forth above, Defendant submits that his correct guideline imprisonment range should be **Level 26** minus three (3) levels for Acceptance of Responsibility which results in **Level 23, Criminal History category III, 57-71 months**. Since Defendant has been convicted of Count One (1) which carries a five (5) year minimum mandatory and Count Seven (7) which carries a consecutive five (5) year sentence, the Defendant's suggested guidelines are less than the minimum mandatory sentences and therefore it is respectfully requested that he be sentenced to a total of **ten (10) years:** (five (5) for Counts 1, 5, 6 and 14 concurrently plus five (5) years consecutive for Count 7).

15. Defendant DISAGREES with and OBJECTS to Attachments A, B and C to the PSI as being irrelevant, immaterial, having not been proven at trial nor provided to the defense at any time, and therefore respectfully submits that they should not be considered for the purpose of sentencing.

WHEREFORE, Defendant, JUNIOR SYLVIN, by and through undersigned counsel, respectfully requests this Honorable Court adopt his Objections set forth above and sentence him to five (5) years for Counts 1, 5 and 6 and 14 concurrently followed by five (5) years consecutive for Count 7 for a total sentence of ten (10) years.

Respectfully Submitted,

BARRY S. GREFF, ESQ.
Attorney For Junior Sylvin
1112 Weston Rd. Suite 207
Weston, FL 33326
(954) 384-0042

\_\_/s/_____
By BARRY S. GREFF

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished to all parties by ECF on July 9, 2010.

BARRY S. GREFF, ESQ.
Attorney For Junior Sylvin
1112 Weston Rd. Suite 207
Weston, FL 33326
(954) 384-0042

\_\_/s/_____
By BARRY S. GREFF